**DUANE MORRIS, LLP**
Sheila Raftery Wiggins (srwiggins@duanemorris.com)
Brian N. Biglin (bnbiglin@duanemorris.com)
Allison N. Zsamba (anzsamba@duanemorris.com)
One Riverfront Plaza
1037 Raymond Blvd., Suite 1800
Newark, New Jersey 07102
Phone: 973.424.2000
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROBERT ALEXANDER,<br><br>         Plaintiff,<br><br>v.<br><br>COUNTY OF ESSEX, COUNTY OF MONMOUTH; CFG HEALTH SYSTEMS, LLC; GUY CIRELLO, Warden of Essex County Correctional Facility in his official and individual capacity; ALFONZO ORTIZ, Director of Essex County Correctional Facility in his official and individual capacity; MEDICAL DIRECTOR OF ESSEX COUNTY CORRECTIONAL FACILITY, in their official and individual capacity; WARDEN DONALD SUTTON, Warden and Director of the Monmouth County Correctional Institution in his official and individual capacity; MEDICAL DIRECTOR OF MONMOUTH COUNTY CORRECTIONAL INSTITUTION, in their official and individual capacity; JANE and JOHN DOES 1-100 (Fictitious Individuals); and ABC COMPANIES 1-100 (Fictitious Entities),<br><br>         Defendants. | CIVIL ACTION NO.: 2:21-cv-4580 (SDW/LDW)<br><br>**THIRD AMENDED COMPLAINT** |

   Plaintiff Robert Alexander ("Plaintiff" or "Mr. Alexander"), by and through his attorney Duane Morris LLP, states the following by way of this Third Amended Complaint against Defendants COUNTY OF ESSEX, COUNTY OF MONMOUTH, CFG HEALTH SYSTEMS,

DM1\13159695.2

LLC, GUY CIRELLO, Warden of Essex County Correctional Facility in his official and individual capacity, ALFONZO ORTIZ, Director of Essex County Correctional Facility in his official and individual capacity, MEDICAL DIRECTOR OF ESSEX COUNTY CORRECTIONAL FACILITY, in their official and individual capacity, WARDEN DONALD SUTTON, Warden and Director of the Monmouth County Correctional Institution in his official and individual capacity, and MEDICAL DIRECTOR OF MONMOUTH COUNTY CORRECTIONAL INSTITUTION, in their official and individual capacity, JANE and JOHN DOES 1-100 (Fictitious Individuals); and ABC COMPANIES 1-100 (Fictitious Entities), (collectively "Defendants"):

## NATURE OF THE CASE

1.  This action vindicates the rights of a man, confined to a county jail, with a benign pituitary gland tumor, which has caused and continues to cause Plaintiff to suffer regular medical emergencies and severely debilitating conditions – including but not limited to dangerously high blood pressure, loss of vision, headaches, dizziness, nausea, and loss of orientation and cognitive faculties. Plaintiff's suffering has been met with deliberate indifference by the Defendants.

2.  Moreover, this action relates to the utter disregard for Mr. Alexander's basic human dignity, by way of the Defendants failure to provide Mr. Alexander with facility compliant clothing in his size, and violations of Mr. Alexander's fundamental freedom of religion, by way of Defendants' denial of religious observant meals.

## PARTIES

3.  Mr. Alexander is an individual currently residing and housed at the Essex County Correctional Facility located at 354 Doremus Avenue, Newark, New Jersey 07105.

2

4. Defendant County of Essex ("Essex") is a public entity with a principal place of business located at 465 Dr. Martin Luther King, Jr. Boulevard, Newark, New Jersey 07102, which owns and/or operates the Essex County Correctional Facility located at 354 Doremus Avenue, Newark, New Jersey 07105 ("ECCF").

5. Defendant County of Monmouth ("Monmouth") is a public entity with a principal place of business located at One East Main Street, Freehold, New Jersey 07728, which owns and/or operates the Monmouth County Correctional Institution located at 1 Waterworks Road, Freehold, New Jersey 07728 ("MCCI").

6. Upon information and belief at times relevant to the above-captioned matter, Defendant CFG Health Systems, LLC ("CFG") is an entity, with a principal place of business located at 765 Route 70, Suite D-125, Marlton, New Jersey 08053, that, at times relevant to the within complaint, provided/provides medical services to ECCF and MCCI, wherein Plaintiff was and is housed.

7. Upon information and belief at times relevant to the above-captioned matter, Defendant Guy Cirello is an individual that was/is the Warden of ECCF ("Cirello").

8. Upon information and belief at times relevant to the above-captioned matter, Defendant Alfonzo Ortiz is an individual that was/is the Director of ECCF ("Ortiz").

9. Upon information and belief at times relevant to the above-captioned matter, Defendant Medical Director of Essex County Correctional Facility is a natural person or persons that acted as the Medical Director of ECCF.

10. Upon information and belief at times relevant to the above-captioned matter, Defendant Warden Donald Sutton was/is the Warden and/or Director of the MCCI ("Sutton").

11. Upon information and belief at times relevant to the above-captioned matter, Defendant Medical Director of Monmouth County Correctional Institution is a natural person or persons that acted as the Medical Director of MCCI.

12. Defendants JANE and JOHN DOES 1-100 (Fictitious Individuals) and ABC COMPANIES 1-100 (Fictitious Entities) are the fictitiously named additional individuals and entities who are or may be responsible to Plaintiff for damages and injuries are presently unknown (collectively "Fictitious Defendants").

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because this action arises under the laws and Constitution of the United States of America and seeks relief under statutes providing for the protection of civil rights.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events and omissions giving rise to the claims pled herein occurred in the State of New Jersey, wherein all of the defendants reside and/or operate.

## FACTS

15. Mr. Alexander is an incarcerated person, presently housed in ECCF.

*Mr. Alexander's incarceration and indifference to his medical conditions*

16. On October 9, 2019, Mr. Alexander turned himself into the FCI Danbury facility in Connecticut in connection with his sentencing on cr-19-32.

17. On December 5, 2019, a writ was issued for Mr. Alexander's presence in New Jersey for arraignment, scheduled for January 9, 2020, as to indictment 19-836.

18. Due to medical issues, Mr. Alexander could not be transported by the United States Marshall's Service ("USMS") to Court for the January 9, 2020 arraignment.

19. On January 13, 2020, arraignment was scheduled for February 7, 2020, which was held.

20. However, medical issues again postponed Mr. Alexander's transfer to MCCI from the FDC Philadelphia facility, because officials found Mr. Alexander unconscious in his cell.

21. Mr. Alexander was then transferred instead to Jefferson University Hospital.

22. While at Jefferson University Hospital, doctors diagnosed Mr. Alexander with a pituitary gland tumor, and developed a treatment plan.

23. On or about January 31, 2020, Mr. Alexander was transferred to MCCI; however, upon information and belief, MCCI was negligent/grossly negligent when it failed to ensure that Mr. Alexander's medical records, including but not necessarily limited to a list of his medications and treatment plan for his pituitary gland tumor, were part of his transport and admission to MCCI.

24. Upon information and belief, when Mr. Alexander was admitted to MCCI, Mr. Alexander's blood pressure was severely elevated, over 200, he was unable to walk, dizzy, nauseated, and suffered from blurred vision.

25. Upon information and belief, Mr. Alexander sought medical assistance from Monmouth, MCCI, Sutton, Defendant Medical Director of MCCI, the Fictitious Defendants (collectively "Monmouth Defendants") and/or CFG.

26. Upon information and belief, the Monmouth Defendants and CFG exhibited deliberate indifference, were negligent, and/or grossly negligent in response to Mr. Alexander's compromised medical condition having:

    a. denied Mr. Alexander access to necessary medication and medical treatment; and

5

      b. refused to obtain Mr. Alexander's medical records from the USMS, Jefferson Health, and/or other sources; instead, upon information and belief, Mr. Alexander was accused of having imagined or made up the existence of his tumor.

Nevertheless, Mr. Alexander's medical conditions (including his need for emergency services) fell on death ears.

27. Shortly thereafter, and after the Monmouth Defendants and CFG discounted his explanation of his medical conditions, Mr. Alexander was hospitalized, in Trenton, due to having lost consciousness and because his blood pressure was dangerously high – conditions Mr. Alexander understood and believed to be associated with the Monmouth Defendants' and/or CFG's failure to provide him his necessary treatment for his tumor and blood pressure.

28. When discharged from the Trenton hospital, Monmouth Defendants and/or CFG transported Mr. Alexander to MCCI in a semi-conscious condition, with blurred vision, in a wheelchair.

29. Thereafter, Mr. Alexander recalls be left in an infirmary bed, with part of his body draped off the edge, while he was vomiting and urinating himself. Upon information and belief, Mr. Alexander was left in this condition, untended to or without proper and adequate medical care, for several days.

30. Upon information and belief, once Mr. Alexander recovered sufficiently enough to communicate with his family, he called them to obtain medical assistance and to obtain medical records from USMS and/or other sources, which the Monmouth Defendants and/or CFG should have already had or sought to obtain.

31. Further, while at MCCI, Mr. Alexander began to experience pain in his lower extremities, feet, and back, necessitating orthopedic shoes with arch and ankle support.

32. Despite requesting to be seen by appropriate medical providers for the pain in his lower extremities, feet, and back, the Monmouth Defendants and/or CFG exhibited deliberate indifference, were negligent, and/or grossly negligent by failing to respond and/or adequately respond to Mr. Alexander's condition.

33. Upon information and belief, as a result of the deliberate indifference, negligence, and/or gross negligence of the Monmouth Defendants and/or CFG – and, later, Essex, ECCF, Cirello, Ortiz, Defendant Medical Director of ECCF and/or the Fictitious Defendants (the "Essex Defendants") – Mr. Alexander continues to suffer pain and limited range of motion and flexibility in his lower extremities, feet, and back.

34. Upon information and belief, throughout the duration of Mr. Alexander's confinement to MCCI and, later, at ECCF, Mr. Alexander regularly experienced, without limitation, blurred vision, nose bleeds, headaches, nausea, uncontrolled blood pressure, – including life threatening spikes in blood pressure – loss of consciousness, reduced mobility, reduced flexibility, extreme pain, depression, feelings of hopelessness and anxiety.

35. Upon information and belief, throughout the duration of Mr. Alexander's confinement to MCCI, Mr. Alexander's medical records were not timely obtained nor was he properly and consistently administered proscribed medications. Moreover, Mr. Alexander's medical treatment plan, which he understood to have been established by Jefferson University Hospital, was not implemented and/or was not properly carried out.

36. In or around September 8, 2020, when Mr. Alexander was transferred from MCCI to ECCF, the Defendants were deliberately indifferent, negligent, and/or grossly negligent when they again failed to ensure that ECCF was made aware of his medical conditions, prescriptions,

and treatment plan, which had not been properly followed since its inception at Jefferson University Hospital.

37. Again, Mr. Alexander was not believed when he tried to inform Essex Defendants and CFG of his medical conditions, treatment, medications and plans.

38. Despite the pleas of Mr. Alexander and his family members, who have graciously advocated on Mr. Alexander's behalf – via calls to managers, wardens, medical staff, agents and representatives of the Defendants, and internal complaints and/or grievances submitted to and/or filed with the Defendants - Defendants did and continue to ignore and neglect Mr. Alexander's medical concerns, grievances and pleas for medical treatment and for the treatment plan for his tumor to be followed.

39. Moreover, Defendants denied Mr. Alexander access to outside medical specialist and facilities necessary to evaluate and treat his brain tumor.

40. To date, the Essex Defendants continue to deny Mr. Alexander proper and consistent medical care, including without limitation emergent medical care, medications, diagnostic testing, and/or proper medical oversight.

41. Mr. Alexander's health has and continues to deteriorate – including without limitation a growing tumor, blurred vision, headaches, nosebleeds and uncontrolled blood pressure – due to the actions and inactions of Defendants.

*Interference with Sincerely Held Religious Beliefs*

42. Mr. Alexander is an African American and member of the Jewish faith.

43. Upon information and belief, the Monmouth Defendants and Essex Defendants did not believe Plaintiff was Jewish due to his ethnicity and/or national origin.

44. As part of his religious observance, Mr. Alexander has requested, on numerous occasions, kosher compliant meals.

45. While at MCCI and ECCF, the Monmouth Defendants and Essex Defendants have denied Mr. Alexander kosher complaint meals.

46. Moreover, during his incarceration at MCCI and ECCF, the Monmouth Defendants and Essex Defendants have denied Mr. Alexander access to each facility's respective chapel, clergy and religious rights.

47. Accordingly, Mr. Alexander has been unable to observe his sincerely held religious beliefs while under the care, custody and control of the Monmouth Defendants and Essex Defendants.

*Other Conditions of Confinement*

48. Notwithstanding the clearly established law, Defendants have subjected Mr. Alexander to mistreatment rising well beyond the level of unconstitutional punishment, as summarized in the non-exhaustive fashion set forth above and below.

49. While housed at ECCF and MCCI the conditions of Mr. Alexander's confinement have amounted to punishment beyond those established by his sentencing and/or are such that they are cruel and unusual.

50. Mr. Alexander is an approximately 6-foot-tall, obese male, weighing approximately 430 pounds, nonetheless, Mr. Alexander's weight has fluctuated slightly overtime.

51. Upon information and belief, Mr. Alexander has been subject to excessive COVID-19 lockdowns, which have limited his access to his attorneys and family – in addition to his inability to access outside medical treatment and facilities – 15 minute or less showers, no

outdoor access for recreational and/or exercise purposes, no library or book access, limited access to clean drinking water, and hot meals. Rather, Mr. Alexander was subject to being forced to stay in his cell or housing area for approximately 23 hours per day.

52. Importantly, upon information and belief, during Mr. Alexander's incarceration with ECCF, the Essex inmates were instructed not to drink from the sinks in their cells due to the water being contaminated. Accordingly, upon information and belief, inmates, including Mr. Alexander, were denied sufficient access to clean water which was maintained in coolers outside of the inmates' locked cells. Instead, upon information and belied, Mr. Alexander was only given small, infrequent amounts of water, far less than what is reasonable, necessary and dignified.

53. While housed at ECCF, Mr. Alexander has been denied access to facility approved clothing in his size; rather, Mr. Alexander has been limited to wearing his outfit from MCCI while housed at ECCF and does not have a change of undergarments. Accordingly, Mr. Alexander has been denied laundry services and unable to properly maintain hygiene while housed at ECCF due to the lack of clothing. Indeed, Mr. Alexander is forced to wash his limited clothing while in the shower – with the consequence being that he is wearing wet clothing or spending significant portions time in a state of undress – or go unclothed while his clothing is cleaned by facilities.

54. Mr. Alexander's lack of proper clothing directly impacts his safety, health, wellbeing, dignity, and makes him disproportionately more vulnerable in light of his deteriorating health.

55. Moreover, due to his lack of proper clothing, Mr. Alexander's access to vital areas of ECCF facilities – such as, but not limited to, the law library, books and commissary – have been limited or unreasonable limitations have been threatened simply because the Essex

Defendants have denied Mr. Alexander to ECCF approved clothing – a matter which is wholly outside of Mr. Alexander's control.

56. Mr. Alexander has also regularly been subjected to unreasonable environmental conditions at ECCF and MCCI including but not limited to constant bright lights and loud audio announcements at all hours of the day and night.

57. To date, Mr. Alexander and his family have followed the Defendants' administrative procedures with respect to the complaints identified herein without resolution.

## COUNT I

### VIOLATION OF 42 U.S.C. § 1983
(deliberate indifference to serious medical needs)

58. Plaintiff repeats and repleads each and every response to the allegations contained in the foregoing paragraphs as set forth at length herein.

59. Plaintiff had "serious medical needs" during his time in Defendant's custody, each of which was diagnosed by a physician as requiring treatment and/or were so obvious that any person would easily recognize the need for medical attention.

60. Plaintiff's "serious medical needs" included, but were not necessarily limited to:

    a. High blood pressure – including life threatening spikes in blood pressure;

    b. Pituitary gland tumor;

    c. Nausea;

    d. Blurred vision;

    e. Loss of orientation;

    f. Dizziness;

    g. Nose bleeds;

    h. Headaches;

      i. Pain and loss of mobility and/or flexibility in his lower extremities, feet, and back; and/or

      j. Difficulty walking, or otherwise ambulating.

61. Defendants were aware, or should have been aware had they taken reasonable steps to obtain Mr. Alexander's medical records, of each and every serious medical need of Plaintiff.

62. Defendants intentionally, negligently and/or was grossly negligent when, without limitation, they failed to:

      a. Obtain Mr. Alexander's medical records;

      b. Properly follow Mr. Alexander's medical treatment plan established by Jefferson University Hospital and/or other medical professionals responsible for establishing and determining Mr. Alexander's care and treatment for the foregoing serious medical needs;

      c. Administer proscribed medications;

      d. Obtain diagnostic testing;

      e. Grant Mr. Alexander access to outside medical providers and/or facilities; and

      f. Fit Mr. Alexander for and provide him with orthopedic shoes.

63. Defendants unreasonably and inhumanely delayed the administering and/or failed to ensure the basic treatment of the foregoing serious medical needs.

64. Defendants further persisted in courses of treatment, or lack thereof, in the face of Plaintiff's pain and risks of additional injuries.

DM1\13159695.2

65. The Monmouth Defendants and Essex Defendants were the final decision- and policy-makers for MCCI and ECCF, respectively, which entered into a contract with CFG to provide all medical services to persons such as Plaintiff.

66. Defendants acted pursuant to the policies and customs, which are and were conterminous with the policies and customs of Monmouth and Essex.

67. Defendants knew or should have known that such policies and customs would practically guarantee the violation of Mr. Alexander's clearly established Constitutional rights.

68. Upon information and belief, Defendants were made personally aware of Plaintiff's serious medical needs, and failed to ensure that appropriate measures were taken.

69. Accordingly, Defendants failed to address Plaintiff's serious medical needs, evincing deliberate indifference to such needs and causing injury and pain to Plaintiff.

70. Defendant's conduct not only constituted unlawful punishment under the Fourteenth Amendment, but rose to the level of cruel and unusual punishment in violation of the Eighth Amendment.

## COUNT II

**VIOLATION OF 42 U.S.C. § 1983**
**(conditions of confinement amounting to punishment)**

71. Plaintiff repeats and repleads each and every response to the allegations contained in the foregoing paragraphs as set forth at length herein.

72. Defendants confined Plaintiff in spaces – including the Infirmary, which was operated by Defendants – with cruel and intolerable conditions, including but not limited to:

   a. Unsanitary conditions;

   b. No access to the outdoors for light, air, and exercise;

   c. No accessibility to basic cleanliness and sanitation;

    d. No access to properly fitting, facility approved clothing;

    e. No reasonable access to laundry services;

    f. No access, and/or limited access, to family, attorneys, and/or clergy;

    g. For excessive periods of time, subject to bright environment;

    h. For excessive periods of time, subject to loud noises and announcements;

    i. No access, and/or limited access, to clean drinking water;

    j. No access, and/or limited access, to hot food; and

    k. Denial of access, and/or threat of denial of access, to religious services, religious meals, law library, books and commissary.

73. Defendants decision to confine Plaintiff in intolerable, unsafe spaces lacking any accommodation for his disabilities constitutes unacceptable punishment in violation of the Fourteenth Amendment, and is cruel and unusual punishment in violation of the Eight Amendment.

74. Defendants knew or should have known of the conditions in which Plaintiff was confined.

75. The decision(s) and/or omissions which subjected Plaintiff to such intolerable, unsafe, unsanitary, and unreasonable confinement were done by Defendants and/or their customs and policies.

76. Defendants knew or should have known that such customs and policies would cause violation of Plaintiff's clearly established Constitutional rights.

77. The dangerous and inhumane conditions all arose from the decisions, omissions, policies and/or customs of the Defendants, who were the final decision makers.

## COUNT III

**VIOLATION OF 42 U.S.C. § 12132**
**(Americans with Disabilities Act)**

78. Plaintiff repeats and repleads each and every response to the allegations contained in the foregoing paragraphs as set forth at length herein.

79. Defendants are public entities and/or agents thereof which provide public services to MCCI and ECCF, where Plaintiff was and is housed.

80. At all times relevant, Plaintiff had physical impairments and medical conditions which substantially limited, on a permanent and/or indefinite basis, multiple life activities, most notably his ability to walk, see, maintain cognitive function and consciousness.

81. The Defendants excluded Plaintiff from participating in, and denied him the benefits of, its public services in numerous respects due to its failure to provide Plaintiff with necessary medical treatment, orthopedic shoes, and clothing for a person of his stature and weight.

82. By failing to provide Plaintiff access to medical treatment, orthopedic shoes, and basic clothing, Mr. Alexander has been denied or threatened with the denial of basic access to rudimentary services, basic hygiene, and the facilitates at ECCF, as detailed above.

83. Plaintiff has and continues to be injured and his basic dignity denied as a result of the acts, inactions, and omissions of the Defendants.

84. The Defendants further discriminated by reason of Mr. Alexander's disability by failing to provide him basic medical treatment, orthopedic shoes, basic clothing and access to rudimentary services, basic hygiene, and the facilitates at ECCF.

85. The acts, inactions, and/or omissions of the Defendants have caused Plaintiff extreme depression, feelings of hopelessness and anxiety.

15

## COUNT IV

### VIOLATION OF THE RELIGIOUS LAND USE
### AND INSTITUTIONALIZED PERSONS ACT, 42 U.S.C. § 2000cc *et al.*, (RLUIPA)

86. Plaintiff repeats and repleads each and every response to the allegations contained in the foregoing paragraphs as set forth at length herein.

87. Plaintiff is an African American and member of the Jewish faith.

88. Upon information and belief, the Monmouth Defendants and Essex Defendants were made aware, or should have been aware of Plaintiff's sincerely held religious beliefs.

89. Upon information and belief, the Monmouth Defendants and Essex Defendants did not believe Plaintiff was Jewish due to his ethnicity and/or national origin.

90. As part of his religious observance, Plaintiff has requested, on numerous occasions, kosher compliant meals.

91. While at MCCI and ECCF, the Monmouth Defendants and Essex Defendants have denied Plaintiff kosher complaint meals.

92. Moreover, during his incarceration at MCCI and ECCF, the Monmouth Defendants and Essex Defendants have instituted unreasonable lockdowns, policies, and customers which have resulted in Plaintiff being denied Mr. Alexander access to each facility's respective chapel, clergy and religious rights.

93. The Monmouth Defendants and Essex Defendants have intentionally and/or unreasonably prohibited and/or cause there to be a substantial burden to Plaintiff's practice of his religion.

94. The Monmouth Defendants and Essex Defendants do not have a compelling interest for imposing the foregoing unreasonable restrictions on Plaintiff's practice of his sincerely held religious beliefs.

95. Accordingly, Mr. Alexander has been unable to observe his sincerely held religious beliefs while under the care, custody and control of the Monmouth Defendants and Essex Defendants in violation of RLUIPA and his Constitutional First Amendment rights.

## COUNT V

### VIOLATION OF N.J.S.A. 10:5-1 *et seq.*
### (New Jersey Law Against Discrimination)

96. Plaintiff repeats and repleads each and every response to the allegations contained in the foregoing paragraphs as set forth at length herein.

97. Defendants are public entities and/or agents thereof which provide public services to MCCI and ECCF, where Plaintiff was and is housed.

98. At all times relevant and as discussed above, Plaintiff had a disability.

99. Plaintiff is an African American and member of the Jewish faith.

100. Upon information and belief, Defendants discriminated against Plaintiff when he was denied basic medical treatment, proscribed medication, and other medical services, as more specifically detailed above and incorporated herein.

101. Upon information and belief, the Monmouth Defendants and Essex Defendants discriminated against Plaintiff due to his ethnicity and/or national origin when they denied Plaintiff the ability to practice his religion, as detailed more specifically detailed above and incorporated herein.

102. Upon information and belief, the Essex Defendants discriminated against Plaintiff when he was denied proper clothing and access to basic hygiene and services at ECCF due to the lack of clothing, as more superficially detailed above and incorporated herein.

103. The acts, inactions, and/or omissions of the Defendants have caused Plaintiff extreme depression, feelings of hopelessness and anxiety.

## COUNT VI

### MEDICAL MALPRACTICE
### (Negligence/Gross Negligence)

104. Plaintiff repeats and repleads each and every response to the allegations contained in the foregoing paragraphs as set forth at length herein.

105. Defendant Medical Director of MCCI, Defendant Medical Director of ECCF, CFG and the Fictitious Defendants owed a duty of care to Plaintiff, that is, to abide by the professional standards of a reasonable physician under the circumstances.

106. Defendant Medical Director of MCCI, Defendant Medical Director of ECCF, CFG and the Fictitious Defendants breached that duty by, among other things, having failed to:

   a. Obtain Mr. Alexander's medical records;

   b. Properly follow Mr. Alexander's medical treatment plan established by Jefferson University Hospital and/or other medical professionals responsible for establishing and determining Mr. Alexander's care and treatment for the foregoing serious medical needs;

   c. Administer proscribed medications;

   d. Obtain diagnostic testing;

   e. Grant Mr. Alexander access to outside medical providers and/or facilities; and

   f. Fit Mr. Alexander for and provide him with orthopedic shoes.

107. Defendant Medical Director of MCCI, Defendant Medical Director of ECCF, CFG and the Fictitious Defendants deviated from the professional standard of care has caused and continues to cause Plaintiff to be injured as set forth herein.

108. Plaintiff has and continues to suffer physical and emotional damages as a result of Defendant Medical Director of MCCI, Defendant Medical Director of ECCF, CFG and the Fictitious Defendants' breaches of duty.

109. Defendant Medical Director of MCCI, Defendant Medical Director of ECCF, and the Fictitious Defendants' intentional, negligent, and/or grossly negligent acts and/or omissions occurred while they were acting within the scope of their employment with CFG. At all times relevant Defendant Medical Director of MCCI, Defendant Medical Director of ECCF, and the Fictitious Defendants had authority to control the work of the employees, agents and/or representatives of CFG that did or should have provided Plaintiff proper medical care.

## COUNT VII

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### ("Outrage")

110. Plaintiff repeats and repleads each and every response to the allegations contained in the foregoing paragraphs as set forth at length herein.

111. Defendants' acts, inactions, and/or omissions were extreme and outrageous, going beyond all bounds of decency and being fairly regarded as atrocious and intolerable.

112. Defendants' outrageous conduct was intentional and committed with knowledge and deliberate disregard of the high probability that Plaintiff would suffer extreme pain and emotional distress.

113. Defendants' outrageous conduct occurred while they were acting with the scope of their employment and/or authority over the control and care of Plaintiff.

114. Due to the Defendant's outrageous conduct, Plaintiff has suffered emotional distress that the average person, similarly situated, would find intolerable.

DM1\13159695.2

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment in his favor and against the Defendants, and demands (1) compensatory damages, (2) punitive damages, (3) the reasonable value of his attorneys' services and costs, (4) interest, jointly and severally to the extent appropriate at law, (5) an order enjoining the Defendants from discriminating against disabled and medically vulnerable persons at ECCF and MCCI, (6) an order compelling the Essex Defendants to make available appropriate sized ECCF compliant clothing to all persons housed at ECCF that require non-typical clothing sizes; (7) an order enjoining Monmouth Defendants and Essex Defendants from prohibiting or impeding persons housed at ECCF and/or MCCI from practicing their religion based upon that persons race or national origin; and (8) against persons at ECCF and MCCI all other relief the Court deems necessary, just and proper.

**JURY DEMAND**

Plaintiff hereby prays for and demands a trial by jury as to all issues appropriately tried by jury.

**CERTIFICATION PURSUANT TO L. CIV. R. 11.2**

I hereby certify that, to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court, arbitration or administrative proceeding.

Respectfully submitted,

Dated: June 7, 2022
Newark, New Jersey

s/ *[signature]*
Sheila Raftery Wiggins (srwiggins@duanemorris.com)
Brian N. Biglin (bnbiglin@duanemorris.com)
Allison N. Zsamba (anzsamba@duanemorris.com)
**DUANE MORRIS, LLP**
One Riverfront Plaza
1037 Raymond Blvd., Suite 1800
Newark, New Jersey 07102
Phone: 973.424.2000